Martina OGG, Appellant

v.

DILLARD'S, INC., Appellee.

No. 05–06–00626–CV.

Court of Appeals of Texas, Dallas.

Nov. 9, 2007.

Regan L. Williams, McKool Smith, P.C., Dallas, Danny Ray Scott, Law Office of Danny R. Scott, P.C., Beaumont, TX, for Appellant.

Edwin E. Wright III, Stradley & Wright, P.C., Dallas, TX, for Appellee.

Before Justices MOSELEY, LANG, and MAZZANT.

## OPINION

Opinion by Justice LANG.

Appellant Martina Ogg brought an action against Dillard's, a department store, for assault, false imprisonment, intentional infliction of emotional distress, invasion of privacy, negligence, and malicious prosecution. Appellant contends the trial court erred in granting summary judgment in favor of Dillard's and dismissing her claims. We affirm the trial court's judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 2001, appellant went to the Dillard's department store at North Park Mall in Dallas with a male acquaintance. According to appellant, in exchange for the ride to the mall, her acquaintance gave her an expensive men's Coach wallet along with a Dillard's proof of purchase, but no sales receipt. Summary judgment evidence showed that appellant's acquaintance had "purchased" the wallet that day at his place of employment, a Dillard's department store at Valley View Mall in Dallas by using a credit card number that did not belong to him and "hand-keying" the number into the cash register. He did not have authority from the credit card owner to use the card number. Appellant claims she only knew her acquaintance worked at Valley View Mall, but was not sure which store, and had no knowledge of the credit card transaction.

When they arrived at the Dillard's store, appellant returned the wallet her acquaintance had given her to a store clerk, asking for a Dillard's gift card instead of crediting the credit card used to purchase the wallet. The sales clerk processed the return and gave appellant the gift card. After the return was completed and appellant had walked away from the cash register, the sales clerk became suspicious of the transaction and notified the sales manager on duty, Paul Dille. Dille investigated the information on the proof of purchase label affixed to the returned wallet. He learned the wallet had been purchased earlier that day at the Dillard's Valley View store with a credit card number which had been "hand-keyed" into the cash register rather than the actual credit card being "swiped" through the register's credit card reader. Dillard's preference is that credit cards should be "swiped" or read electronically into the register rather than "hand-keyed" because "swiping" the card establishes the customer presented the card at the time of purchase. "Hand-keying" the number into the cash register presents a higher risk of credit card abuse because the actual card does not need to be presented to make a purchase.

Dille called the credit card company and discovered that the credit card belonged to a resident of San Antonio. The credit card company advised him the account had been charged that day at Dillard's in Valley View Mall and at a movie theater in San Antonio shortly before Dille's call. Dille decided to investigate further. He believed a possible credit card fraud had taken place because the unauthorized use of another person's credit card, followed by returning the purchased items for cash or a Dillard's gift card, is a common form of fraud.

The sales clerk told Dille the woman who had returned the wallet was accompanied by a black male in a black hat. Using that description, Dille requested the assistance of the sales clerk and Dillard's security, who were off-duty, uniformed Dallas Police Officers, to locate the couple. The officers were paid $25 per hour by Dillard's to provide on-premises security services.

Edmundo Lujan, a Dallas Police Officer with seven years of experience, was one of the officers working that night at the Dillard's store. He was wearing his Dallas Police uniform and badge. Dille notified Officer Lujan that appellant and a companion were acting suspiciously and possibly engaging in credit card abuse. Based on this information, Officer Lujan and the accompanying officers decided there was sufficient reason to detain appellant.

Appellant and her acquaintance were still in the Dillard's store when Officer Lujan and the other officers located them. Officer Lujan and Dille stopped appellant at approximately 7:52 p.m. to investigate the potential credit card abuse and Dille began asking her questions. Dille asked appellant how she had obtained the men's Coach wallet she returned. She first replied that she obtained it from a "homeless woman on a street corner." Then, she said she was given the wallet by a man who drove up to her at a street corner. Finding these answers suspicious, Dille asked her to remain with Officer Lujan while he talked to appellant's companion, who had been separately detained by two other officers.

Officer Lujan asked appellant for her identification while they waited for Dille to question appellant's companion. However, appellant did not have her identification with her. She said she had left it in her car. According to appellant, Officer Lujan ordered her to retrieve her identification from the car and when she tried to comply with the officer's order, he said, "Hey, come back, you're evading arrest." Appellant asserts Officer Lujan then seized her, twisted her arm behind her back, and threw her to the floor using a violent takedown maneuver. In response to the physical force used against her and the pain resulting from the takedown, appellant screamed and cried. She asserts she did

not utter any profanities. According to Officer Lujan, he did not order her to retrieve her identification from the car. Rather, as he glanced over to the officers who were questioning appellant's companion, appellant pushed him with both hands and attempted to flee on foot through the exit doors. He performed a standard takedown maneuver, handcuffed her, and picked her up with both arms. The arrest occurred at approximately 8:02 p.m.

After the arrest, Dille escorted Officer Lujan, appellant, appellant's acquaintance, and the other officers to the executive offices. Officer Lujan testified in a deposition that appellant screamed profanities in the store after her arrest and while being escorted to the office. Once in the executive offices, Dille continued his investigation of the credit card transaction, but the credit card company was unable to contact the card owner at that time to verify whether appellant's acquaintance had permission to use her credit card for the purchase. Therefore, appellant's acquaintance was released when the store closed at 9:00 p.m.

While Dille was investigating further the use of the credit card, Officer Lujan called the desk sergeant at the Lew Sterrett Jail in Dallas to describe the incident with appellant and discuss the charges to be filed against her. After the telephone call, Officer Lujan charged appellant with evading arrest and another officer cited her for disorderly conduct because of her conduct after the arrest. Officer Lujan then called the Dallas Police Department dispatcher to request a patrol officer to transport the appellant to Lew Sterrett Jail. The transporting officers arrived at Dillard's at approximately 9:30 p.m. and took appellant to Lew Sterrett Jail. Appellant later pleaded "no contest" to the disorderly conduct offense and was found guilty. On the

charge of evading arrest and detention, she was found not guilty after a jury trial.

Appellant brought this action against Dillard's for assault, false imprisonment, intentional infliction of emotional distress, invasion of privacy, negligence, and malicious prosecution. Dillard's filed traditional and no-evidence motions for summary judgment, arguing that it was entitled to judgment as a matter of law on each of plaintiff's claims and that plaintiff lacked evidence of one or more essential elements of her claims. The trial court granted summary judgment, without specifying the basis, and dismissed plaintiff's suit in its entirety. Appellant perfected this appeal and asserts the trial court erred in granting summary judgment dismissing her claims.

## II. STANDARD OF REVIEW

The standard of review in summary judgment is well-established. Tex.R. Civ. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). In reviewing a traditional motion for summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgm't Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

After an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more of the essential elements of a claim. *See* Tex.R. Civ. P. 166a(I). A no-evidence motion for summary judgment places the burden on the nonmovant to present summary judgment evidence raising a genuine fact issue. *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 683 (Tex.App.-Dallas 2000, no pet.). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *Gen. Mills*, 12 S.W.3d at 832–33. Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* at 833. More than a scintilla of evidence exists only when the competent summary judgment evidence would permit reasonable and fair-minded people to differ in their conclusions. *Merrill Dow Pharm. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Rehab 2112, L.L.C. v. Audio Images Int'l, Inc.*, 168 S.W.3d 308, 313 (Tex.App.-Dallas 2005, no pet.). On the other hand, the evidence amounts to no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003) (citing *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

When the trial court does not specify the basis for its summary judgment, the appealing party must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *See Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005); *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 867 (Tex.App.-Dallas 2005, no

pet.); *Caldwell v. Curioni*, 125 S.W.3d 784, 789 (Tex.App.-Dallas 2004, pet. denied). Both no-evidence and traditional grounds for summary judgment are evaluated to determine whether the trial court was correct under any theory. *See Mazon Assocs. Inc. v. Comerica Bank*, 195 S.W.3d 800, 807 (Tex.App.-Dallas 2006, no pet. h.); *Alaniz v. Hoyt*, 105 S.W.3d 330, 344 (Tex. App.-Corpus Christi 2003, no pet.); *McKillip v. Employers Fire Ins. Co.*, 932 S.W.2d 268, 270 (Tex.App.-Texarkana 1996, no writ). An appellate court must affirm the summary judgment if any one of the movant's theories, which supports the summary judgment, has merit. *See Star–Telegram*, 915 S.W.2d at 473; *First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 923 (Tex.App.-Dallas 2005, no pet.).

### III. DISCUSSION

Appellant's only issue on appeal is whether the trial court erred in granting the summary judgment dismissing her claims. The primary focus of our analysis is whether Dillard's is vicariously or directly liable for Officer Lujan's alleged actions. Specifically, we must determine whether Officer Lujan's actions were conducted in his public capacity as a police officer, or as a private employee of Dillard's.

Appellant advances four specific arguments in support of her sole issue: 1) a fact question exists whether Dille and Officer Lujan detained her for the purpose of protecting Dillard's merchandise and financial interests; 2) a fact question exists as to whether Officer Lujan was acting within the scope of his employment with Dillard's when he detained and arrested appellant; 3) in support of her argument for direct liability against Dillard's, appellant asserts Officer Lujan was acting as a private employee for Dillard's, rather than

a public official, when he committed the acts forming the bases for the claims of assault, negligence, and malicious prosecution and, furthermore, there is a fact question as to each element of these causes of action; and 4) the statute of limitations did not bar the lawsuit.

In response, Dillard's argues that the trial court did not err in granting summary judgment in its favor on all of appellant's claims because Officer Lujan was acting as a police officer, not a Dillard's employee, when he committed the alleged acts that are the subject of appellant's lawsuit. Further, as to the assault claim, appellee argues the trial court did not err in granting summary judgment because Officer Lujan was authorized to use reasonable force in arresting the appellant. As to the false imprisonment claim, appellee asserts the trial court did not err in granting summary judgment because appellant was not detained after her arrest under Dillard's authority. As to the malicious prosecution claim, appellee argues the trial court did not err in granting summary judgment because Dillard's did not initiate or prosecute the evading arrest criminal prosecution and appellant did not prevail on the disorderly conduct criminal prosecution. In response to appellant's argument that a statute of limitations defense did not bar the lawsuit, appellee responds that the issue is not before the court because it withdrew that defense before summary judgment was granted. Accordingly, the summary judgment could not be based on the statute of limitations defense.

### A. Vicarious Liability

Appellant seeks to hold Dillard's vicariously liable for the acts of Officer Lujan on claims of assault, false imprisonment, intentional infliction of emotional distress, and invasion of privacy. Appellant argues

there is a fact question as to: 1) whether Officer Lujan detained her for the purpose of protecting Dillard's merchandise and financial interests and 2) whether Officer Lujan was acting within the scope of his employment with Dillard's when he detained and arrested appellant. Dillard's asserts Officer Lujan was acting in his official capacity as a police officer and not as an employee of Dillard's when the alleged acts upon which appellant bases her lawsuit occurred, so it is not vicariously liable for Officer Lujan's actions.

### 1. Applicable Law

Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of an employee. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541–42 (Tex.2002). In determining whether a police officer acted as the employee of a private employer or in an official capacity, we "analyze the capacity in which the officer acted at the time he committed the acts for which the complaint is made." *Morgan v. City of Alvin*, 175 S.W.3d 408, 416 (Tex.App.-Houston [1st Dist.] 2004, no pet.) "If the officer is performing a public duty, such as the enforcement of general laws, the officer's private employer incurs no vicarious responsibility for that officer's acts, even though the employer may have directed the activities." *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex.App.-Austin 2001, no pet); *see also Larkin v. Johnson*, 44 S.W.3d 188, 189 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) ("[W]here an officer is performing a job incident to enforcing the public laws, he is acting in the course and scope of his employment as a police officer even if the private employer directed him to perform the duty"). However, "[i]f the officer was engaged in protecting the employer's property, ejecting trespassers, or enforcing rules and regulations promulgat-

ed by the employer, ... the trier of fact decides whether the officer was acting as a public officer or as a servant of the employer." *Mansfield*, 37 S.W.3d at 150.

If the officer was acting as an on-duty officer at the time the acts were committed, then respondeat superior will not extend liability to the employer. *See Leake v. Half Price Books, Records, Magazines, Inc.*, 918 S.W.2d 559, 563 (Tex. App.-Dallas 1996, no writ). "If an off-duty officer observes a crime, as a matter of law, he becomes an on-duty officer for purposes of determining whether or not a private employer is vicariously liable for the officer's actions." *Morgan*, 175 S.W.3d at 417 (citing *Cherqui v. Westheimer Street Festival Corp.*, 116 S.W.3d 337, 344 (Tex. App.-Houston [14th Dist.] 2003, no pet.)); *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 377 (Tex.App.-Dallas 1994, no writ). "An officer's public duty may also be triggered by reasonable suspicion to detain a person for investigation even if the officer lacks knowledge of facts justifying an arrest based on probable cause." *Morgan*, 175 S.W.3d at 417 (citing *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App.1991) ("[E]ven a temporary detention ... is not permissible unless the circumstances upon which the officers rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity.")); *Harris County v. Gibbons*, 150 S.W.3d 877, 882–83 (Tex.App.-Houston [14th Dist.] 2004, no pet.). The officer's performance of public duty also extends to detaining the arrested person after the arrest until he can be taken to the police station. *Mansfield*, 37 S.W.3d at 150 (concluding employer cannot be vicariously liable, as a matter of law, for the acts of an off-duty police officer employed as a security guard who arrested

and detained a trespasser until he could be removed to the police station).

Credit card abuse is a crime. *See* TEX. PEN.CODE ANN. § 32.31 (Vernon 2007). A person commits credit card abuse if with intent to obtain a benefit fraudulently, he presents or uses a credit card or debit card with knowledge that the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder. TEX. PEN.CODE ANN. § 32.31(b)(2)(A) (Vernon 2007). A person can also commit credit card abuse if he receives a benefit that he knows has been obtained in violation of the credit card abuse statute. TEX. PEN.CODE ANN. § 32.31(b)(3) (Vernon 2007). Credit card abuse is a state jail felony. TEX. PEN.CODE ANN. § 32.31(d)(Vernon 2007).

## 2. Application of Law to Facts

■ While appellant questions Dille's basis for suspecting credit card abuse, she does not dispute that Officer Lujan was informed by Dille that the appellant was suspected of committing the crime of credit card abuse. However, appellant specifically asserts there is a fact question regarding whether Officer Lujan was actually protecting Dillard's financial interest when he detained her or acting as a police officer.

Appellant argues Officer Lujan was directed to investigate the violation of Dillard's procedure regarding "hand-keying" credit card numbers by a Dillard's employee. It is appellant's contention this procedure concerned protection of Dillard's financial interests. We cannot agree.

The evidence shows that appellant was detained for investigation of possible credit card abuse, which constitutes enforcement of a general law. Even if the investigation was conducted at the direction of Dillard's because it also involved Dillard's financial interest, the fact remains that appellant

was being investigated for a crime and the officer was performing his public duty. *See Mansfield,* 37 S.W.3d at 150; *Larkin,* 44 S.W.3d at 189. Regardless of the reason for the initial detention, once Officer Lujan decided independently to arrest appellant for evading arrest, he was not protecting a financial interest of Dillard's. *See Larkin,* 44 S.W.3d at 189–90 ("[T]here is no issue of material fact about whether Johnson was acting as an employee of the Harris County Sheriff's Office when he arrested a person who refused to comply with the officer's attempt to detain him.").

Appellant argues in addition that since "nothing in the record suggests that Dille even told Lujan the details of his telephone conversations with the credit card company or its efforts to locate the cardholder," Officer Lujan "arrived only to assist in the investigation of a violation of Dillard's policy regarding the use of hand-keyed credit card transactions." However, it is acknowledged Officer Lujan had been told appellant was suspected of the crime of credit card abuse. We conclude appellant's contention does no more than create a mere surmise or suspicion that Officer Lujan was *solely* protecting Dillard's financial interest or enforcing its rules and regulations.

■ Appellant next argues that Officer Lujan was not acting as a police officer when he detained her because he had not personally witnessed a crime taking place. Once again, we cannot agree with appellant. Because an off-duty police officer's public duty can also be triggered by "reasonable suspicion" that a person is, has been, or soon will be engaged in criminal activity, the officer need not personally witness a crime to be acting within his official capacity. *See Morgan,* 175 S.W.3d at 417. At the time Officer Lujan first detained appellant, he had been told by the sales manager that appellant was act-

ing suspiciously and possibly engaging in credit card abuse. Also, Officer Lujan observed Dille's questioning of appellant regarding how she obtained the wallet. Officer Lujan had a reasonable suspicion to detain appellant for further investigation for credit card abuse, even if the facts known to Officer Lujan at that point would not be sufficient to justify an arrest for that crime. *See id.* In detaining appellant in the investigation of a crime, Officer Lujan was acting to enforce a general law in his official capacity as a police officer.

Finally, appellant asserts Officer Lujan's "capacity never switched from private employee to public official" because he did not observe appellant committing the crime of evading arrest. To support this assertion, appellant argues since the jury that acquitted appellant of the charge of evading arrest or detention obviously believed Officer Lujan did not observe appellant committing that crime, then Officer Lujan did not observe the commission of a crime that would invoke his public duty. We cannot agree.

A detention can be made on a "reasonable suspicion" by the officer based on the circumstances at the time of the incident. This is a lower standard than probable cause. *See Morgan,* 175 S.W.3d at 417; *Harris County,* 150 S.W.3d at 882–83. Furthermore, the claimed offense of evading arrest occurred subsequent to the initial detention. Officer Lujan was acting in his official capacity as he began the investigation of credit card abuse. He continued to perform in his official capacity after the arrest for evading arrest by detaining her until she could be taken to the police station. *See Mansfield,* 37 S.W.3d at 150. We conclude that all of Officer Lujan's acts during the initial detention for the credit card investigation until appellant was taken into police custody by the patrol officers for her arrest

were performed in his official capacity as a police officer, not as a Dillard's employee. Therefore, Dillard's is not vicariously liable for Officer Lujan's acts.

The trial court did not err in granting summary judgment dismissing appellant's claims involving vicarious liability for assault, false imprisonment, intentional infliction of emotional distress, and invasion of privacy.

## B. Direct Liability

Appellant also seeks to hold Dillard's directly liable for assault, negligent hiring, negligent retention, and malicious prosecution based on Officer Lujan's acts. Appellant argues that Officer Lujan was acting as a private employee for Dillard's, rather than a public official, when he committed the acts on which each of these claims are based. Therefore, appellant argues, since Officer Lujan was an employee of Dillard's and appellant has shown that a fact question exists as to each element of these causes of action, summary judgment was improper.

### 1. Applicable Law

Negligent hiring and retention are claims based on an employer's direct negligence rather than on vicarious liability. *Morris v. JTM Materials,* 78 S.W.3d 28, 49 (Tex.App.-Fort Worth 2002, no pet.) The basis of responsibility for negligent hiring and retention is the employer's negligence in hiring or retaining an incompetent employee who the employer knew or, in the exercise of ordinary care, should have known was incompetent or unfit, and thereby creating an unreasonable risk of harm to others. *Estate of Arrington v. Fields,* 578 S.W.2d 173, 178 (Tex.App.-Tyler 1979, writ ref'd n.r.e.); *Leake,* 918 S.W.2d at 563; *Morris,* 78 S.W.3d at 49. *See also Rosell v. Cent. West Motor Stages, Inc.,* 89 S.W.3d 643, 655 (Tex.App.-

Dallas 2002, pet. denied); *TXI Transp. Co. v. Hughes,* 224 S.W.3d 870, 901–02 (Tex. App.-Fort Worth 2007, pet. filed.). "Negligence in hiring requires that the employer's 'failure to investigate, screen, or supervise its [hirees] proximately caused the injuries the plaintiffs allege.'" *Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 796 (Tex. 2006) (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995)). An employer is not negligent when there is nothing in the employee's background that would cause a reasonable employer not to hire or retain the employee. *See Fifth Club, Inc.,* 196 S.W.3d at 796 (concluding there was no evidence to support a finding of negligent hiring where officer employed as a security guard had a prior reprimand for using profanity to a member of the public and was violating a peace officer policy in working the off-duty job). *Cf. Morris,* 78 S.W.3d at 51–52 (concluding trial court erred in granting summary judgment for employer on negligent hiring and retention claims where employee's three prior drug or alcohol related offenses and falsification of employment application raised a fact issue on whether the employer was exercising reasonable care in qualifying him as a truck driver).

When the claims involve negligent hiring or retention of an employee, an employer may be held directly liable for the acts of an employee, regardless of whether those acts are within the course and scope of employment. *Morris,* 78 S.W.3d at 49; *Wrenn v. G.A.T.X. Logistics,* 73 S.W.3d 489, 496 (Tex.App.-Fort Worth 2002, no pet.). However, when an off-duty police officer employee has already become an on-duty police officer when the injury occurred, he is no longer an employee for the purpose of a negligent retention claim. *Leake,* 918 S.W.2d at 564 ("Because Harmon became an on-duty police officer at the time of the shooting (and

was no longer a Half Price Books employee), Half Price Books's retention of Harmon *as an employee* could not have been the proximate cause of the deceased's death.").

The elements of a cause of action for malicious prosecution of criminal proceedings are: 1) a criminal prosecution was commenced against the plaintiff; 2) the defendant initiated or procured the prosecution; 3) the prosecution was terminated in the plaintiff's favor; 4) the plaintiff was innocent of the charge; 5) the defendant did not have probable cause to initiate or procure the prosecution; 6) the defendant acted with malice; and 7) the plaintiff suffered damages as a result of the prosecution. *Richey v. Brookshire Grocery Co.,* 952 S.W.2d 515, 517 (Tex. 1997). "A person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities." *Browning–Ferris Indus. v. Lieck,* 881 S.W.2d 288, 292 (Tex.1994). "A person procures a criminal prosecution if his actions are enough to cause the prosecution, and but for his actions the prosecution would not have occurred." *Id.* A person "cannot procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person, a law enforcement official or the grand jury." *Id.* An exception is "when a person provides information which he knows is false to another to cause a criminal prosecution." *Id.*

### 2. Application of Law to Facts

#### a. Assault

Appellant argues that Dillard's should be held *directly* liable for assault. However, appellant offers no authority to demonstrate a legal basis for direct liability. An employer is responsible for the tortious acts of its employee through the theory of vicarious liability. *See St. Joseph Hosp.,* 94 S.W.3d at 541–42. As dis-

cussed above, Dillard's has demonstrated that it is not vicariously liable for the acts of Officer Lujan. We cannot conclude the trial court erred in granting summary judgment dismissing appellant's claims for assault.

### b. Negligent Hiring and Negligent Retention

■ Once Officer Lujan began investigating the crime of credit card abuse, he was acting within the scope of his employment as a police officer and was not acting as an employee of Dillard's. Dillard's cannot be directly liable for negligent hiring or retention based on alleged acts Officer Lujan performed as an on-duty police officer. *See Leake*, 918 S.W.2d at 564.

■ Even had Officer Lujan somehow acted as a Dillard's employee at the time of the events, there is no evidence in the record which supports a claim of negligent hiring or retention. Officer Lujan was hired by Dillard's as a security officer in 1998. The record reflects, at that time, he had no complaints on his record. In order to demonstrate a claim for negligent hiring, there must be evidence in an employee's record that would cause a reasonable employer not to hire the employee. *See Fifth Club, Inc.*, 196 S.W.3d at 796.

■ Appellant also argues that Dillard's was negligent in retaining Officer Lujan after an internal affairs investigation of a complaint in 2000 regarding an alleged use of excessive force during the arrest of a female in 1999. However, appellant presented evidence of only one complaint in Officer Lujan's background prior to appellant's arrest. The record reflects the result of the investigation into this single complaint against Officer Lujan was inconclusive and no disciplinary action was taken. Appellant also presented evidence of investigations into prior incidents involving two *other officers* who worked for

Dillard's and who were present when appellant was arrested. However, these other alleged incidents did not involve Officer Lujan. The single prior complaint against Officer Lujan, in which no disciplinary action taken and no police department policies were found to be violated, is not evidence that he was incompetent or unfit for a position as a security guard. *See Estate of Arrington*, 578 S.W.2d at 178; *Fifth Club, Inc.*, 196 S.W.3d at 797. Even had the record shown Dillard's knew of the single prior complaint against Lujan, that complaint is not sufficient to put Dillard's on notice that hiring Officer Lujan would create a risk of harm or cause a reasonable employer to refrain from hiring or retaining Officer Lujan. *See id.* We cannot conclude the trial court erred in granting summary judgment dismissing appellant's negligent hiring and negligent retention claims.

### c. Malicious Prosecution

■ The record reflects appellant was charged by Officer Lujan with evading arrest and detention and cited by another officer for disorderly conduct. In order to make out a prima facie case of malicious prosecution, the prosecution must end in appellant's favor. *See Richey*, 952 S.W.2d at 517. However, as to the disorderly conduct charge, she has not made a prima facie case because she pleaded no contest to disorderly conduct and was found guilty.

■ In addition, there is no evidence that Dillard's initiated or procured the prosecution, that it made a formal complaint to law enforcement on either of these charges, or had any discretion in determining whether to prosecute appellant for evading arrest or disorderly conduct. *See id.; Browning–Ferris Indus.*, 881 S.W.2d at 292. Both charges were made by the State, not Dillard's. We cannot conclude the trial court erred in grant-

ing summary judgment dismissing appellant's malicious prosecution claim.

## C. Statute of Limitations

Appellant argues that the summary judgment was improper because the statute of limitations does not bar her claims. However, prior to submission of its motion for summary judgment to the trial court for a decision, Dillard's withdrew its argument that the claims were barred by limitations in its supplement to the motion for summary judgment. Accordingly, the trial court's summary judgment cannot be based upon the statute of limitations defense and we need not consider appellant's argument on appeal in this regard.

## IV. CONCLUSION

We decide against appellant on her sole point. The trial court's order granting summary judgment in favor of Dillard's and dismissing appellant's claims should be affirmed.