COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-033-CV

 

 

THOMAS JAY DANGERFIELD                                                APPELLANT

 

                                                   V.

 

JACOB ORMSBY AND ACADEMY, 

LTD.                                                                                  APPELLEES

 

                                              ------------

 

           FROM
THE 342ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. Introduction

Appellant Thomas Jay
Dangerfield appeals from the summary judgment rendered in favor of appellees
Jacob Ormsby and Academy, Ltd.  In one
issue, appellant argues that there were genuine issues of material fact on his
claims of false imprisonment, malicious prosecution, and negligence.  We affirm.

 








II. Background Facts

On August 16, 2004, at 2:00
p.m., Cindy Ann Perry-Alm, a loss prevention employee for Academy, was about to
leave the store when she saw a white Honda pull up and park in the fire lane,
which she thought was odd.  She observed
a man enter the store, head to the watch counter, pick up a watch, take it out
of the package, and hold it in his hand. 
He then went to the second watch counter and took another watch.  Perry-Alm got supervisor Ormsby=s attention as the man went into the apparel department, concealed
both watches, removed the security devices, and left the store.  Perry-Alm, with Ormsby about fifteen to
twenty feet behind her, followed the man out of the store, identified herself,
and asked him to come back inside; the man pushed her to the ground and drove
off.  Perry-Alm called 9‑1‑1,
and a customer in the parking lot wrote down a description of the car and a
partial tag number.  The whole incident
lasted about four or five minutes.

 Perry-Alm described the suspect as a black
male in his forties who was six feet, three or four inches tall, very thin, and
160B175 pounds, with facial hair. 
The suspect wore a baseball cap, jeans, a Hawaiian shirt, and big,
square eyeglasses.








When White Settlement Police
Officer S. Denham arrived, he checked the license plate provided and discovered
that the car was registered to Debra Henry. 
On September 9, 2004, White Settlement Police Officer Timothy N.T.
Scott, who was assigned the case, reviewed the file and went to the French
Quarter Apartments, the address listed for Debra Henry.  He went to the leasing office and spoke with
the manager about the person who lived in apartment 220.  Officer Scott learned that appellant lived in
the apartment and not Debra Henry.  The
manager allowed Officer Scott to review the apartment=s file on appellant and copy appellant=s driver=s
license.  Officer Scott believed that
appellant=s driver=s license picture matched Perry-Alm=s description of the suspect. 
Officer Scott also researched appellant=s criminal history, which included theft, marijuana possession, and
forgery.  Based on the information he had
collected, Officer Scott believed that appellant was the suspected shoplifter. 

On September 10, 2004,
Officer Scott contacted appellant=s Parole Officer, Joanne Brandon, and told her that appellant was a
suspect in a robbery. Because the shoplifting incident report alleged that the
suspect had touched or physically shoved another person, Parole Officer Brandon
filed a parole violation report. 








Officer Scott used appellant=s driver=s license
photograph to create a photo line-up. 
Scott attempted to contact Perry-Alm to view the photo line-up, but he
discovered that she no longer worked for Academy.  Academy=s director of loss prevention asked Ormsby to assist Officer Scott,
and Ormsby agreed to look at a photo line-up. 
On September 13, 2004, Ormsby viewed the photo line-up for about sixty
to ninety seconds, picked out appellant as the shoplifter, and initialed the
line-up. 

On September 15, 2004,
Officer Scott obtained a probable cause warrant from the local magistrate,
which led to appellant=s
arrest.  During appellant=s incarceration, Debra Henry, appellant=s sister and the car=s registered owner, contacted an attorney and explained that her
boyfriend, Robert Adams, borrowed her car on August 16, 2004, and committed the
theft at Academy. Adams subsequently confessed to the crime.  Perry-Alm viewed Adams=s taped confession and identified him as the shoplifter.[1]








Appellant was incarcerated
from September 15, 2004 to November 23, 2004, a period of seventy days.  After he was released, appellant sued
appellees for false imprisonment, intentional infliction of emotional distress,
malicious prosecution, negligence, and gross negligence.  Appellees filed a traditional motion for
summary judgment on appellant=s false imprisonment and malicious prosecution claims and a no
evidence motion for summary judgment on those claims and on appellant=s intentional infliction of emotional distress and negligent hiring
claims, which the trial court granted. 
Appellant timely filed this appeal, claiming that there is some evidence
of his false imprisonment, malicious prosecution, and negligence claims.[2]

III. Standard of Review

After adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207
(Tex. 2002).  The trial court must grant
the motion unless the nonmovant produces summary judgment evidence that raises
a genuine issue of material fact.  See
Tex. R. Civ. P. 166a(i) &
cmt.; Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).








When reviewing a no evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.[3]  Sudan v. Sudan,  199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no evidence summary judgment is not proper.  Moore v. K Mart Corp., 981 S.W.2d 266,
269 (Tex. App.CSan Antonio
1998, pet. denied). 

IV. False Imprisonment and
Malicious Prosecution 

In their motion, Academy and
Ormsby claimed that there was no evidence that they initiated or procured a
criminal prosecution or false imprisonment of appellant.  Appellant argues that there is some evidence
supporting his false imprisonment and malicious prosecution claims.  Because the causes of action have similar
elements, we will address them together.  

A.     False Imprisonment       








The essential elements of
false imprisonment are (1) a willful detention, (2) without consent, and (3)
without authority of law.  Wal-Mart
Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002).  Additionally, in Texas, liability for false
imprisonment extends beyond those who willfully participate in detaining the
complaining party to those who request or direct the detention.  Id. at 507.  False imprisonment=s first element may thus be satisfied by conduct that is intended to
cause one to be detained, and in fact causes the detention, even when the actor
does not participate in the detention.  Id.  When the alleged detention results from
an unlawful arrest, to prove instigation, a plaintiff must show that the
defendant clearly directed or requested the arrest.  Id. 
Thus, to hold a third party liable for instigating the detention,
the act of arrest must be made by the officer, not of his or her own volition,
but to carry out the request of the defendant. 
Id.  

However, a private citizen
who merely reports a crime and identifies the suspect to law enforcement
authorities has not requested or directed the suspect=s arrest and will not be liable for instigating a subsequent false
imprisonment.  Id.  A citizen has a clear legal right to
report criminal misconduct to authorities even when the reporting party
mistakenly identifies the wrong person so long as the reporting party leaves to
the police the decision as to what shall be done about any arrest, without
persuading or influencing them.  Id. at
507B08.  

B.     Malicious
Prosecution

To prevail on a malicious
prosecution claim, a plaintiff must establish 

(1)
the commencement of a criminal prosecution against the plaintiff,

 

(2)
causation (initiation or procurement) of the action by the defendant,








(3)
termination of the prosecution in the plaintiff=s
favor,

 

(4)
the plaintiff=s innocence,

 

(5)
the absence of probable cause for the proceedings,

 

(6)
malice in filing the charge, and

 

(7)
damage to the plaintiff.

 

Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997). 
A person initiates a criminal prosecution if he makes a formal charge to
law enforcement  authorities.  Browning-Ferris Indus., Inc. v. Lieck, 881
S.W.2d 288, 292 (Tex. 1994).  A person
procures a criminal prosecution if his actions are enough to cause the
prosecution, and but for his actions the prosecution would not have
occurred.  Id.  In other words, procurement requires that
a person=s actions be both a necessary and a sufficient cause of the criminal
prosecution.  Id.  Thus, a person cannot procure a criminal
prosecution when the decision whether to prosecute is left to the discretion of
another person, a law enforcement official, or the grand jury.  Id. 
Because malicious prosecution actions involve a delicate balance between
society=s interest in the efficient enforcement of the criminal law and the
individual=s interest
in freedom from unjustifiable and oppressive criminal prosecution, a person is
not liable for merely aiding or cooperating in causing a criminal
prosecution.  Id.; see also Richey, 952
S.W.2d at 517. 








C.     Procurement
and Instigating

The Texas Supreme Court has
noted the similarity between the causation standards of Aprocuring@ a criminal
proceeding, which is required for a malicious prosecution claim, and Ainstigating@ an arrest,
which is an element of a false imprisonment claim.  See Wal-Mart, 92 S.W.3d at 509.  For a defendant to procure proceedings, it
must appear that his desire to have the proceedings initiated, expressed by his
direction, request, or pressure of any kind, was the determining factor in the
official=s decision to commence the prosecution.  Id. 
Thus, much like the initiation of a false imprisonment, the
procurement of criminal proceedings requires a direction or request for the
action taken.  Id. Also, like the
false imprisonment rule, merely reporting a crime and the suspected criminal to
law enforcement authorities does not constitute procurement of criminal
proceedings when the authorities exercise discretion in deciding whether to
prosecute.  Id.








However, a person reporting
criminal conduct to the authorities may nevertheless be considered to have
procured the proceedings if he provides information that he knows is
false.  Id.  This exception to the rule is justified
because a person who provides false information cannot later complain if a
prosecutor acts on it.  Id.  Such a person has procured the resulting
prosecution, regardless of the actions of the prosecutor, and the causation
element for malicious prosecution is satisfied; this same reasoning applies
with equal force in the false imprisonment context.  Id.

D.     Analysis

  Although
neither Ormsby nor Academy participated in appellant=s arrest and detention, appellant argues that Ormsby selected him in
the photo line-up knowing that he did not commit the crime, which he claims
amounted to directing the police to arrest him. 

Academy employees Ormsby and
Perry-Alm witnessed the shoplifting incident and provided information to
Officer Denham regarding the suspect=s physical description.  Ormsby
later identified appellant in the photo line-up as the person he believed was
the shoplifter.  Neither Ormsby and
Perry-Alm, nor Academy through them, identified appellant by name as the
shoplifter; they only provided the police with a physical description of the
shoplifter. Additionally, Ormsby had never heard of appellant until he was told
appellant=s name after
identifying him as the shoplifter in the photo line-up.  Appellant produced no evidence to show that
Ormsby knew he was providing false information. 
At no time did Academy or Ormsby do much more than report a crime and
mistakenly identify the wrong person.[4]  See id. at 507. 








Furthermore, appellant
produced no evidence to show that Academy, Ormsby, or Perry-Alm contacted
Parole Officer Brandon or Officer Scott and requested or directed appellant=s arrest.  See id.; Lieck,
881 S.W.2d at 292.  Parole Officer
Brandon had the discretion to file a parole violation report on appellant after
Officer Scott told her that appellant was a suspect in a shoplifting
incident.  Parole Officer Brandon did not
conduct any investigation after speaking with Officer Scott, nor did she have
any independent information other that what Officer Scott told her.  Additionally, Officer Scott stated that the
police department decided to charge appellant with theft under $1,500 because
of his two prior convictions and that he then submitted the case to the
district attorney=s
office.  Officer Scott made the
determination to forward the case to the district attorney=s office.  He also stated that
neither Academy nor Ormsby pressured him to refer the case to the district
attorney=s office.








Because a private citizen who
reports a crime and mistakenly identifies the wrong person has not requested or
directed the suspect=s arrest,
and because there is no evidence they knowingly provided false information to
the police, neither Academy nor Ormsby is liable for instigating appellant=s subsequent imprisonment or for procuring criminal proceedings
against him.  See Wal-Mart, 92
S.W.3d at 507; Lieck, 881 S.W.2d at 292. 
The choice to detain and arrest appellant was made by the police
department and not at the direction or instruction of either Orsmby or Academy.  Additionally, the decision whether to
arrest and prosecute appellant was left to the discretion of the Officer Scott,
Parole Officer Brandon, and the district attorney=s office.  See Wal-Mart, 92
S.W.3d at 507; Lieck, 881 S.W.2d at 292. 
Therefore, the trial court did not err in rendering summary judgment for
appellees on the false imprisonment and malicious prosecution claims.  We overrule this portion of appellant=s sole issue.

V. Negligent Hiring,
Training, Retention, and Supervision

Academy also filed a no
evidence motion for summary judgment on appellant=s negligence claims.  Appellant
argues that there is some evidence that Academy negligently hired, trained,
retained, and supervised Ormsby. 

A.     Applicable
Law








Negligent hiring, retention,
and supervision claims are all simple negligence causes of action based on an
employer=s direct negligence rather than on vicarious liability.  Morris v. JTM Materials, Inc., 78
S.W.3d 28, 49 (Tex. App.CFort Worth
2002, no pet.).  The elements of a
negligence action are duty, a breach of that duty, and damages proximately
caused by the breach.  Id.; see
also Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex.
1990).  An employer owes a duty to the
general public to ascertain the qualifications and competence of the employees
it hires, especially when the employees are engaged in occupations that require
skill or experience and that could be hazardous to the safety of others.  Morris, 78 S.W.3d at 49.  Therefore, an employer is liable for
negligent hiring, retention, or supervision if it hires an incompetent or unfit
employee whom it knows, or by the exercise of reasonable care should have
known, was incompetent or unfit, thereby creating an unreasonable risk of harm
to others.  Id. 








Negligence in hiring or
retention requires that the employer=s failure to investigate, screen, or supervise its employees
proximately cause the injuries the plaintiff alleges.  Fifth Club, Inc. v. Ramirez, 196
S.W.3d 788, 796 (Tex. 2006).  An employer
is not negligent when there is nothing in the employee=s background that would cause a reasonable employer not to hire or
retain the employee.  Id.; Ogg v.
Dillard=s Inc., 239 S.W.3d 409, 421 (Tex. App.CDallas 2007, pet. denied.).  To
establish a claim for negligent training, a plaintiff must prove that a
reasonably prudent employer would have provided training beyond that which was
given and that failure to do so caused his injuries.[5]  See Allsup=s Convenience Stores, Inc. v. Warren, 934 S.W.2d 433, 437 (Tex. App.CAmarillo 1996, writ denied).  To
establish a claim for negligent supervision, a plaintiff must show that an
employer=s failure to supervise its employees caused his injuries.  See Knight v. City Streets, L.L.C., 167
S.W.3d 580, 584 (Tex. App.CHouston [14th Dist.] 2005, no pet.); Morris, 78 S.W.3d at
49.  

Appellees= motion claimed that appellant had no evidence of proximate
cause.  The components of proximate cause
are cause-in-fact and forseeability.  Knight,
167 S.W.3d at 584.  To establish that
Academy=s actions were the proximate cause of appellant=s injuries, appellant must produce evidence that raises a genuine
issue of material fact that Academy=s actions in hiring, retaining, training, and supervising Ormsby were
the cause-in-fact of his injuries.  See
id; see also Fifth Club, 196 S.W.3d at 796; Morris, 78 S.W.3d at 49;
Allsup=s, 934 S.W.2d at 437.

 

 








B.     Analysis

There is no evidence to
support appellant=s negligence
claims.  Appellant cited Ormsby=s discharge from the military for a depressive disorder and Ormsby=s failure to provide sufficient detail on the police report as
evidence of Academy=s negligent
hiring, training, retention, and supervision. 
Appellant also included Academy=s associate handbook, core values, and security procedures in its
response to appellees= motion for
summary judgment as evidence of Academy=s negligent hiring, training, retention, and supervision.  However, appellant fails to explain how this
evidence relates to his claims.

Regardless, there is nothing
in Ormsby=s employee
record to show that he was incompetent or unfit for Academy to hire.  See Fifth Club, 196 S.W.3d at 796; Ogg,
239 S.W.3d at 422.  There is also no
evidence that Ormsby was incompetent or unfit for a position as a loss
prevention employee such that Academy was negligent in retaining him after he
was hired.  See Fifth Club, 196
S.W.3d at 796; Ogg, 239 S.W.3d at 422. 
Additionally, there is no evidence that Academy should have provided
more training or supervision beyond that which was given.[6]  See Allsup=s, 934 S.W.2d at 437. 








Furthermore, as previously
noted, there is no evidence that Academy or Ormsby proximately caused appellant=s injuries because, as addressed above, they were not responsible for
appellant=s arrest or
detention.  Ormsby stated that Academy=s policy was to refer shoplifting cases to the police department;
after that, it was beyond Academy=s control as to the disposition of the case. Appellant did not produce
evidence to show a link between Ormsby=s depressive disorder, Academy=s training procedures, and Ormsby=s potential or actual job performance. 
Thus, appellant did not present any evidence to connect Academy=s alleged negligent hiring, training, retention, or supervision to
appellant=s
injuries.  See Fifth Club, 196
S.W.3d at 796.  

Therefore, because appellant
did not present any evidence of Academy=s negligence and because Academy and Ormsby were not the proximate
cause of appellant=s injuries,
we conclude that the trial court did not err in granting summary judgment for
appellees and dismiss appellant=s negligent hiring, training, retention, and supervision claims.  We overrule this portion of appellant=s sole issue.

 

 

 

 








VI. Conclusion

Having overruled appellant=s sole issue, we affirm the trial court=s summary judgment in favor of Academy and Ormsby.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

 

DELIVERED:
August 14, 2008 

 











[1]The
record does not indicate whether or not Adams was charged with or convicted of
a crime.  He died in March 2005 of lung
cancer. 





[2]When
a party moves for summary judgment under both rules 166a(c) and 166a(i), we
will first review the trial court=s judgment under the
standards of rule 166a(i).  Ford Motor
Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If the appellants failed to produce more than
a scintilla of evidence under that burden, then there is no need to analyze
whether appellee=s
summary judgment proof satisfied the less stringent rule 166a(c) burden.  Id.





[3]Appellant
incorporated by reference everything filed of record or otherwise contained in
the court=s
file as summary judgment evidence. 





[4]Officer
Scott testified that Ormsby told him not to contact Perry-Alm because she no
longer worked at Academy; however, Officer Scott did attempt to contact her to
have her review the photo line-up but was unsuccessful.





[5]For
purposes of our analysis, we assume without deciding that a cause of action for
negligent training exists under Texas law. 
See TXI Transp. Co. v. Hughes, 224 S.W.3d 870, 902 n.39 (Tex.
App.CFort
Worth 2007, pet. granted) (observing that the Waco court has recognized Aa negligent
training theory of recovery@); see also Builders
Transport, Inc. v. Grice-Smith, 167 S.W.3d 1, 10 (Tex. App.CWaco
2005, no pet.), judgm=t withdrawn and superseded
on reh=g, 167
S.W.3d 18 (Tex. App.CWaco
2005, pet. denied); Allsup=s Convenience Stores, Inc. v.
Warren, 934 S.W.2d 433, 437 (Tex. App.CAmarillo
1996, writ denied).





[6]The
trial court sustained appellees= objections to appellant=s
expert report on negligent hiring, training, retention, and supervision;
appellant does not appeal that ruling.