**Reverse and Remand; Opinion Filed July 23, 2019.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00205-CV**

**CKJ TRUCKING, L.P. AND STEPHEN JACK BOND, Appellants**
**V.**
**THE CITY OF HONEY GROVE, Appellee**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-16-0633**

## OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Partida-Kipness

Appellants CKJ Trucking, L.P. and Stephen Jack Bond assert that the trial court erred in granting the plea to the jurisdiction and motion to dismiss filed by the City of Honey Grove. We reverse the trial court's judgment and remand.

## BACKGROUND

On September 16, 2015, Ketan and Manali Amine were driving south on U.S. Highway 121 in Fannin County, Texas. At the same time, Zachary Scott Williamson, an off-duty police officer for the City of Honey Grove ("City"), was traveling north on Highway 121. Along this route, Williamson observed a Trenton police car with its lights activated parked behind a private vehicle and an unmarked SUV blocking the police car in. The cars were parked at a business which Williamson testified was a "liquor store attached to a gun shop." Williamson testified that

the "scene did not appear to be secure" because he "didn't see any of the occupants from either vehicle either being detained or interviewed, which is a safety issue." Williamson further testified in his deposition that the scene drew his attention because he "didn't see the Trenton officer in the process of issuing a citation or speaking to anybody." Williamson testified that he thought this "atypical" situation raised serious concerns that the police officer might be ambushed, in distress, in need of assistance, or be in physical danger because the "patrol vehicle was blocked in at a liquor store after hours." Williamson testified that part of his concern was based upon the fact that this event had occurred "right after the first ambush killings in New York" and right about the time the "Black Lives Matter had really started kicking off and threats against the police officers had been made." In addition, Williamson was concerned that a crime was being committed in the parking lot. Williamson then engaged his red and blue emergency lights and attempted to make a U-turn to go south on Highway 121 but was unable to make the turn in a continuous manner. Although the Amines were able to stop on the south side of the highway and avoid colliding with Williamson, they were rear-ended by a tractor trailer that could not stop in time. The tractor trailer that collided with the Amines was owned or leased by CKJ Trucking and driven by Bond.

In the underlying litigation, the Amines filed a lawsuit asserting various claims for negligence against Bond and CKJ Trucking. Bond and CKJ Trucking then filed a third party petition against Williamson and the City. In regard to the City, Bond and CKJ Trucking alleged that the City's governmental immunity was waived because the accident and the Amines' injuries were "proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment" and the accident arose "from the operation or use of a motor-driven vehicle or motor-driven equipment." *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1). In response, the City filed a plea to the jurisdiction, motion to dismiss and motion to sever ("motion to dismiss"). In the motion to dismiss, the City argued that it was entitled to a dismissal because

the case did not fall within the limited waiver of immunity in Section 101.021 and the trial court lacked jurisdiction because Williamson was not acting in the scope of his employment at the time of the accident. The trial court granted the City's motion to dismiss and ordered "that any and all claims against Defendant City of Honey Grove are dismissed, with prejudice to Third-Party Plaintiffs refiling same." Bond and CKJ Trucking then timely filed a notice of appeal.

## ANALYSIS

In three issues, Bond and CKJ Trucking assert that the trial court erred in granting the City's motion to dismiss.

Sovereign immunity from suit deprives a trial court of subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Whether a court has subject matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law. *Id.* at 226. Accordingly, we review de novo a challenge to the trial court's subject matter jurisdiction. *Id.* at 228.

The purpose of a plea to the jurisdiction is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). The plaintiff has the burden to plead facts affirmatively showing the trial court has jurisdiction. *Miranda*, 133 S.W.3d at 226. In determining whether the plaintiff has met this burden, we construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. When reviewing a plea to the jurisdiction in which the pleading requirement has been met

–3–

and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. *Id.* We indulge every reasonable inference and resolve doubts in the nonmovant's favor. *Id.* This standard generally mirrors a summary judgment standard under Texas Rule of Civil Procedure 166a(c) and the burden is on the governmental unit as movant to meet the standard of proof. *Id.* After the governmental unit asserts and provides evidentiary support for its plea, the nonmovant is required to show that a disputed material fact issue exists regarding the jurisdictional issue. *Id.*

Under the doctrine of sovereign immunity, governmental entities are not liable for the negligence of their employees absent a constitutional or statutory waiver of immunity. *See Univ. of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex. 1994). The Texas Tort Claims Act ("Act") provides a limited waiver of sovereign immunity. *Miranda*, 133 S.W.3d at 224; TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109. Specifically, the Act provides as follows:

> [a] governmental unit in the state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment.

*See* CIV. PRAC. & REM. § 101.021(1)(A). The Act defines an "employee" as "a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority" and the "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." *Id.* § 101.001(2), (5).

The City argued that Williamson was not in the scope of his employment because he was not acting under the direction of the Honey Grove police department, was not on duty at the time of the accident, was not being paid by Honey Grove, and had not received an assignment from the City. In response, Bond and CKJ Trucking argue that Texas law imposes a duty on peace officers

to prevent crimes against persons committed in their presence outside their employer's geographical limits.  We agree.[1]

Bond and CKJ Trucking assert that pursuant to article 6.06 of the Code of Criminal Procedure, Williamson was required to act based on his suspicion that an offense was taking place and this duty placed him in the scope of his employment with the City.  Article 6.06 provides as follows:

> Whenever, in the presence of a peace officer, or within his view, one person is about to commit an offense against the person or property of another, including the person or property of his spouse, or injure himself, it is his duty to prevent it; and, for this purpose the peace officer may summon any number of the citizens of his country to his aid.

*See* TEX. CODE CRIM. PROC. art. 6.06.  This statute places no territorial constraint on this command to prevent crime to person or property.  *Garza v. Harrison*, 574 S.W.3d 389, 402 (Tex. 2019).

Bond and CKJ Trucking also assert that articles 14.03(d) and 14.03(g)(2) of the Code of Criminal Procedure confer statewide jurisdiction on municipal officers:

> A peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of the peace.[2]

*See* CRIM. PROC. art. 14.03(d).

> A peace officer listed in Subdivision (3), Article 2.12, who is licensed under Chapter 1701, Occupations Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer described in this subdivision who is outside of that officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the offense is committed in the county or counties in which the municipality employing the peace officer is located.

---

[1] Appellants correctly assert the Texas Tort Claims Act does not require the vehicle to be government-owned. The statute's plain language supports this conclusion and the City cites no case actually holding the contrary to be true, which would require reading language into an unambiguous statute.

[2] A "peace officer" includes marshals or police officers of an incorporated city, town or village, and those reserve municipal police officers who hold a permanent peace officer license. *See* TEX. CODE CRIM. PROC. art. 2.12(3).

*See id.* art. 14.03(g)(2). Article 14.03(g)(2) applies only to certain peace officers, including city police officers, and explicitly authorizes a police officer who is "outside the officer's jurisdiction" to arrest a person without a warrant who commits any offense without the officer's presence or view. *Id.*; *Garza*, 574 S.W.3d at 404. Further, an officer's extraterritorial jurisdiction to act pursuant to article 14.03(g)(2) is statewide, except for certain traffic offenses which are not at issue in this case. *Id.*

We note that article 2.13 of the Code of Criminal Procedure also provides authority for the immunity waiver here:

> (a) It is the duty of every peace officer to preserve the peace within the officer's jurisdiction. To effect this purpose, the officer shall use all lawful means.
>
> (b) The officer shall:
>
>   (1) In every case authorized by the provisions of this Code, interfere without warrant to prevent or suppress crime[.]

CRIM. PROC. art. 2.13(a), (b)(1). Officer Williamson was an "employee" under the Act. *See* CIV. PRAC. & REM. § 101.001(2); *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 419–20 (Tex. App.—Dallas 2007, pet. denied); *Turnage v. JPI Multifamily, Inc.*, 64 S.W.3d 614 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (not designated for publication).[3] And, he was within the scope of his employment. *See* CIV. PRAC. & REM. § 101.001(5). As the supreme court recently noted in *Garza v. Harrison*, police officers have a duty to prevent crime and arrest offenders twenty-four hours a day, and that public duty is triggered any time an officer observes a crime even outside the hours of his official work:

> Through [article 6.06 and article 14.03(g)(2)] and others, the Code explicitly contemplates that peace officers will, in certain circumstances, stop crime *wherever* it occurs. As defined in the Code, such action constitutes the lawful exercise of official power.

---

[3] The *Turnage* case contains both a published and an unpublished section of the opinion. Any citation to the *Turnage* case in this opinion shall reference the portion which was not designated for publication.

Peace officers are also expected to stop crime *whenever* it occurs. Peace officers "retain their status as peace officers twenty-four hours a day," which means that "a police officer's 'off-duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity." "If an off-duty officer observes a crime, as a matter of law he becomes an on-duty officer." Peace officers are therefore relatively unique among governmental employees as they may be required to spring into action at a moment's notice, even while off duty. Accordingly, whether an officer is on or off duty does not determine whether the officer's conduct falls within the scope of employment.

. . . An officer enforcing general laws in accordance with a statutory grant of authority is acting in the course and scope of employment as a peace officer.

574 S.W.3d at 403 (internal citations omitted); *see also Turnage*, 64 S.W.3d 614 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (not designated for publication); *Ogg*, 239 S.W.3d at 420; *Moore v. Barker*, No. 14-17-00065-CV, 2017 WL 4017747, at *4 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A peace officer is not relieved of his duties merely because he is off duty. *Garza*, 574 S.W.3d at 403; *Moore*, 2017 WL 4017747, at *4. Rather, the dispositive question is whether the officer was enforcing general laws in accordance with a statutory grant of authority. *Garza*, 574 S.W.3d at 403. Thus, we must consider whether Officer Williamson's actions furthered enforcement of the law, not whether he was off duty when his actions occurred.

Although these types of cases generally involve an officer being triggered into action by witnessing a crime, an officer's public duty can also be triggered by reasonable suspicion. *See Turnage*, 64 S.W.3d 614 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (not designated for publication). "[I]t is not a sine qua non of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction."[4] *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim.

---

[4] "The reason is simple but fundamental. A brief investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a full-blown custodial arrest. For this reason, a warrantless investigative detention may be deemed 'reasonable' for Fourth Amendment purposes on the basis of a lesser quantum or quality of information—reasonable suspicion rather than probable cause. Likewise, because a detention is less intrusive than an arrest, the specificity with which the articulable information known to the police must demonstrate that a particular penal offense has occurred, is occurring, or soon will occur, is concomitantly less. It is, after all, only an 'investigative' detention." *Derichsweiler*, 348 S.W.3d at 916.

App. 2011). "[T]he Fourth Amendment will tolerate a certain degree of police proaction. Particularly with respect to information suggesting that a crime is *about* to occur, the requirement that there be 'some indication that the unusual activity is related to crime' does not necessarily mean that the information must lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent. It is enough to satisfy the lesser standard of reasonable suspicion that the information is sufficiently detailed and reliable—*i.e.*, it supports more than an inarticulate hunch or intuition—to suggest that *something* of an apparently criminal nature is brewing." *Id.* at 916–17.

Here, Williamson's authority to act was triggered by reasonable suspicion because, as described above, he observed a Trenton police car with its lights activated parked in a business parking lot and an unmarked SUV blocking the police car in. Williamson testified that the "scene did not appear to be secure" because he "didn't see any of the occupants from either vehicle either being detained or interviewed, which is a safety issue." Williamson testified that he thought this "atypical" situation raised serious concerns that the police officer might be ambushed, in distress, in need of assistance, or be in physical danger because the "patrol vehicle was blocked in at a liquor store after hours."[5] As stated above, we indulge every reasonable inference and resolve doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. Thus, we conclude that Williamson's authority to act placed him within the scope of his employment with the Honey Grove police department and the City's sovereign immunity has been waived. *See* CIV. PRAC. & REM. § 101.001–.109; CRIM. PROC. arts. 2.13, 6.06.

---

[5] Also, Williamson testified that part of his concern was based upon temporal coincidence: this event occurred "right after the first ambush killings in New York" and right about the time the "Black Lives Matter had really started kicking off and threats against the police officers had been made." The objective facts that police officers had been recently targeted provide further support for Williamson's reasonable suspicion that, in his presence, someone was committing or about to commit an offense against his fellow officer.

–8–

**CONCLUSION**

We reverse the trial court's judgment and remand for proceedings consistent with this opinion.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

180205F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CKJ TRUCKING, LP. AND STEPHEN JACK BOND, Appellants

No. 05-18-00205-CV     V.

THE CITY OF HONEY GROVE, Appellee

On Appeal from the 397th Judicial District Court, Grayson County, Texas
Trial Court Cause No. CV-16-0633.
Opinion delivered by Justice Partida-Kipness. Justices Pedersen, III and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants CKJ TRUCKING, LP. AND STEPHEN JACK BOND recover their costs of this appeal from appellee THE CITY OF HONEY GROVE.

Judgment entered this 23rd day of June, 2019.