**AFFIRM; and Opinion Filed July 18, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00581-CV

**MARTIN FISHMAN AND ROBERT BRODY AS TRUSTEE, INDIVIDUALLY AND DERIVATIVELY, APPELLANTS**
**V.**
**C.O.D. CAPITAL CORP. D/B/A C.O.D. FRIENDLY AND LOWELL BURK, APPELLEES**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 13-12916**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

This appeal arises from a dispute between Lowell Burk and Martin Fishman over C.O.D. Capital Corp. d/b/a C.O.D. Friendly ("COD"), a company they owned along with two others. The parties asserted various claims against each other over a period of two years, but relevant to the appeal are Fishman's claims against Burk for defamation, malicious prosecution, and intentional infliction of emotional distress, and COD's claims against Fishman and Robert Brody, as trustee for the Martin Fishman Family Trust (the Trust), for breach of contract and declaratory judgment.[1]

---

[1] Except for a claim by Fishman and Brody against Burk for breach of fiduciary duty and a claim by Fishman against COD for breach of contract, the other claims were either nonsuited or withdrawn.

Burk moved to dismiss the claims against him pursuant to the Texas Citizens Participation Act (TCPA),[2] and COD moved for summary judgment on its claims against Fishman and Brody. The trial court granted Burk's motion and signed a final judgment granting COD's second motion for summary judgment.[3] This appeal challenges both by separate issues.[4] We affirm.

## BACKGROUND[5]

COD is a closely held corporation founded in 2006 to provide certain financing services to manufacturers, wholesalers, and other shippers of merchandise. It is the brainchild of Fishman, who worked twenty-eight years as a distributor in the women's apparel industry.

In 2010, at Fishman's request, Burk joined Fishman, Fishman's son Darren, and Andy Lavigne as an investor in COD. At the time, COD had not reported a profit. Like the others, Burk invested $82,500 and was issued 25,000 shares of stock pursuant to a shareholder agreement.

About a year later, Burk became COD's chief executive officer.[6] Burk projected significant growth for COD, but COD's performance did not improve. In the spring of 2013, in hopes of "building up COD's equity value," Fishman became COD's "asset retention credit

---

[2] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001-.011 (West 2015).

[3] Fishman and Brody's claim against Burk for breach of fiduciary duty was severed from this suit prior to the final judgment. The breach of contract claim by Fishman against COD was not addressed by the severance order or the summary judgment motion. Accordingly, in signing the final judgment, the trial court erroneously granted more relief than requested. *See Lehman v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). Although the granting of more relief than requested may be reversible error, Fishman does not assert error as to that. *See id.*

[4] Although the appeal was filed by both Fishman and Brody and they filed a joint brief on the merits, the issues raised concern only Fishman.

[5] The facts are taken from the parties' pleadings and summary judgment evidence and are viewed in the light most favorable to Fishman as the non-movant. *See Cheniere Energy, Inc. v. Lofti*, 449 S.W.3d 210, 214 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (TCPA); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (summary judgment).

[6] Around that same time, Burk's friend, Gary Corona, became an equal shareholder with the other four, and pursuant to an amendment to the shareholder agreement, 25,000 shares of stock were issued to Corona's company, Raining Money LP. Corona also became COD's president. Subsequently, all 125,000 shares of stock were canceled and, pursuant to an August 2012 "Amended and Restated Shareholder's Agreement," COD issued 100,000 shares of voting stock and 300,000 shares of non-voting stock. The 100,000 shares of voting stock were divided equally among Fishman, Fishman's son Darren, Burk, and Corona. Of the non-voting stock, 100,000 shares were issued to Burk, 100,000 shares were issued to Corona, and the remaining 100,000 shares were divided equally between Fishman and his son.

manager." However, six months later, on October 29, 2013, Burk fired Fishman following a dispute over COD. Asserting Fishman threatened to shoot him and would not leave COD's office, Burk also reported Fishman to the police and building security. On October 31, 2013, Burk, along with COD, sued Fishman. A year or so into the lawsuit, Burk nonsuited his claims and COD added Brody as a defendant.

*COD's Claims Against Fishman and Brody*

COD's breach of contract and declaratory judgment claims against Fishman and Brody claimed that a transfer by Fishman of his shares of stock to Brody, as trustee of the Trust, violated the shareholder agreement and was void. To ensure the shares issued under the agreement remained closely held, the agreement allowed for the transfer of shares only under certain conditions. If a transfer occurred in breach of the agreement, the agreement provided that the transfer was void and constituted an offer by the breaching shareholder to sell his shares to COD at a specific price.

Among the transfers allowed by the shareholder agreement was a transfer by gift to the trustee of an inter vivos trust for the sole benefit of the shareholder's immediate family. The agreement permitted such transfer conditioned upon COD receiving notice in writing of the exact name of the trust, the trust's federal tax identification number, and the trustee's and beneficiaries' name, address, federal tax identification number or social security number, and relationship to the shareholder.[7] The notice was required to be given to each shareholder at least thirty days before the proposed transfer.[8]

---

[7] If the federal tax identification number had not yet been obtained, the agreement required the notice "indicate that the number has been applied for but not received."

[8] The shareholder agreement was amended in part in January 2011, but the amendment did not alter the transfer by gift to trust or notice provisions.

Fishman created the Trust in February 2012 for the benefit of his grandchildren and for the sole purpose of transferring his shares. Fishman claimed he intended the transfer to be a gift as contemplated under the shareholder agreement and gave Burk verbal and written notice of his intentions prior to the transfer. However, at the time of the transfer, Fishman "was in the midst of resolving disputes with various creditors." He stated that, to avoid the transfer being considered fraudulent, Fishman accepted a $15,000 promissory note from the Trust in exchange for the transfer of stock.

Under the shareholder agreement, a "transfer for consideration" required COD be given an "Offer Notice" detailing the proposed sale and an opportunity to purchase the shares being offered for sale. COD alleged, in its claims against Fishman and Brody, that Fishman failed to give the required notice and was in breach of the agreement. COD sought specific performance of the agreement and a declaration that the transfer of Fishman's shares to Brody and the Trust was void, that COD had the option to purchase those shares, and that the shares were to be transferred to COD at a price as set in the agreement.

Following discovery, COD moved for traditional summary judgment. Relying in part on the shareholder agreement, the Trust papers, and Fishman's deposition testimony, COD argued that it was entitled to judgment as a matter of law on both of its claims because no genuine issue of material fact existed that Fishman did not comply with the transfer requirements of the shareholder agreement and that a void transfer gave COD the option to purchase Fishman's shares at a price as set in the agreement.

Fishman responded to COD's contentions claiming, in relevant part, that a fact issue existed as to the nature of the transfer, whether he substantially complied with the notice provisions of the agreement, and whether his failure to provide the required notice was a material breach of the shareholder agreement. As to the nature of the transfer, Fishman claimed the

transfer was not a "transfer for consideration" but was a gift.  He acknowledged he transferred the stock in exchange for a $15,000 promissory note, but argued that the term "gift" as used in the agreement did not prohibit him from receiving consideration.  Fishman further argued his transfer "met the definition of a conventional gift" because the value of the promissory note was "nominal" compared to the value of the shares.  Additionally, relying on affidavit testimony, Fishman noted the Trust had no means of paying the note as its only asset was the stock, Trust had made no payments on the note, and he later cancelled the note.

As to substantial compliance and material breach, Fishman relied on a copy of the written notice he claimed he gave Burk.  He alleged that the notice consisted of a note he had written by hand following a "general meeting" in January 2012 and stated "Lowell, You said you need notice of my intent to move my stock to the family trust.  This is the follow up to my notice to you at the meeting.  Thanks, Marty."  Fishman argued that by informing Burk that the transfer was to a family trust, he informed COD the transfer was not to "an outsider or competitor" and there was no threat to COD's "stability and continuity."  Further, he claimed that any failure to include "technical and unimportant issues and details" did not frustrate the notice provisions in the agreement and did not violate the standards of good faith and fair dealing.  Finally, he argued the deficiencies in the notice could have been cured had COD "simply ask[ed]" for the required information.

*Fishman's Claims Against Burk*

Fishman's claims against Burk stemmed from Burk's actions after firing Fishman. Fishman asserted Burk's calling the police and building security claiming Fishman threatened to shoot him defamed him and amounted to malicious prosecution.  Although no charges were filed against Fishman, Fishman was banned from the building, a building in which he had worked for over twenty years, and "full-size color pictures" of him "were posted in the loading dock area"

frequented by merchants. In an amended petition filed in August 2015, Fishman claimed that, because of Burk's actions, his reputation was irreparably injured, he incurred thousands of dollars in legal fees, and lost his business. Fishman also claimed that Burk's actions and the filing of the lawsuit caused him to suffer severe emotional distress.

Burk filed an answer and a motion to dismiss pursuant to the TCPA. Burk contended dismissal was mandatory because (1) the statements forming the basis of Fishman's claims were "protected speech that touch and concern health and safety," the "well-being of the community," freedom of petition, and freedom of association, "which includes the right to oppose [the perception of a] threat to [one's] welfare and to that of [others];" (2) the defamation and malicious prosecution claims were barred "as a matter of law" by the one year statute of limitations; (3) the malicious prosecution claim failed because Fishman was not prosecuted; (4) the intentional infliction of emotional distress claim failed because it was essentially the same as the defamation claim; and, (5) the statements relating to or in litigation were protected pursuant to the litigation privilege.

Fishman responded by arguing first that his claims related to a private matter, not a matter concerning the public's health and safety. Second, he asserted that even if his claims related to a matter of public concern, his evidence in support of the defamation and malicious prosecution claims was sufficient to establish a prima facie case for each element of those claims. Third, he argued the defamation and malicious prosecution claims were not barred by limitations because the acts "giving rise" to these claims "relate[d] to, and [were] based upon the same facts, circumstances, transactions, and events upon which this litigation was commenced." Finally, he argued Burk's assertion that the intentional infliction of emotion distress claim was essentially the same as the defamation claim was "not the proper subject" of the motion to dismiss.

*The Trial Court's Rulings*

As stated, the trial court granted Burk's motion and signed a final judgment granting COD's second summary judgment motion. In granting the summary judgment, the trial court declared, pursuant to the Texas Uniform Declaratory Judgments Act,[9] that

> the purported transfer of Voting Stock by Defendant Fishman to Robert Brody, Trustee of the Martin Fishman Family Trust, is void; that COD has the option to purchase the Voting Stock as provided in Article 12, paragraph 12.2; that such Voting Stock be transferred to COD, at a price set per and paid per the Shareholder Agreement as provided in Article 12, paragraph 12.2., and paragraphs 8.1 and 8.2.

## CHAPTER 27 MOTION TO DISMISS

Fishman challenges the trial court's order granting Burk's motion to dismiss in his first issue. In arguing this issue, he contends (a) Burk failed to meet his burden of showing the claims against him arose from his exercise of a constitutionally protected right because the allegations forming the bases for the claims against him did not relate to a matter of public concern; (b) even if Burk met his burden, Fishman established by clear and specific evidence a prima facie case for each claim; and (c) Burk's motion amounted to an improper summary judgment motion.

*Applicable Law*

The TCPA

The TCPA was enacted "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. REM. CODE ANN. § 27.002 (West 2015). To effectuate its purpose, the TCPA provides a burden-shifting procedure for the summary disposition of meritless claims filed in response to a proper exercise of a protected

---

[9] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001-37.011 (West 2015).

right. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898-99 (Tex. 2017) (per curiam); *Levatino v. Apple Tree Cafe Touring, Inc.*, 486 S.W.3d 724, 727 (Tex. App.—Dallas 2016, pet. denied).

The procedure begins with the filing of a motion to dismiss and places the initial burden on the movant to show by a preponderance of the evidence, that the claim against him "is based on, relates to, or is in response to [his] exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." *ExxonMobil Pipeline*, 512 S.W.3d at 898 (quoting TEX. CIV. PRAC. REM. CODE ANN. § 27.005(b); *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding)). If the movant satisfies this burden, the burden shifts to the non-movant to "establish by clear and specific evidence a prima facie case for each essential element of the claim in question." *See* TEX. CIV. PRAC. REM. CODE ANN. § 27.005(c); *Lipsky*, 460 S.W.3d at 587. "Clear and specific evidence" means that the complaining party "must provide enough detail to show the factual basis for [his] claim." *Lipsky*, 460 S.W.3d at 591. A "prima face case" is "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590.

If the non-movant does not satisfy his burden, the claim must be dismissed. TEX. CIV. PRAC. REM. CODE ANN. § 27.005(b), (c). If the non-movant satisfies the burden, the movant then bears the burden to "establish[] by a preponderance of the evidence each essential element of a valid defense to the non-movant's claim." *See id.* § 27.005(d). If the movant satisfies this burden, the claim must be dismissed. TEX. CIV. PRAC. REM. CODE ANN. § 27.005(d).

As is relevant here, the "exercise of the right of free speech means a communication made in connection with a matter of public concern." *Id.* § 27.001(3). The TCPA defines "communication" to "include[] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A

"matter of public concern" includes issues related to health, safety, and environmental, economic, or community well-being.  *See id.* § 27.001(7).

## Defamation

Defamation is "the invasion of a person's interest in her reputation and good name." *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013).  The essential elements of defamation when, as here, the party complaining of defamation is a private individual, are a false statement of fact (1) that was published to a third party; (2) defamed the complaining party; (3) was made with negligence; and (4) caused damages.  *Lipsky*, 460 S.W.3d at 593.  If the statement is defamatory per se, general damages such as loss of reputation and mental anguish are presumed. *Id.*  Statements that "injure[] a person in [his] office, profession, or occupation" or charge the person with the commission of a crime are generally classified as defamatory per se.  *Hancock*, 400 S.W.3d at 64; *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex. App.—Austin 2007, pet. denied).

## Malicious Prosecution

An action for malicious prosecution asserts the complaining party "has improperly been made the subject of the legal process to his damage."  *Daniels v. Conrad*, 331 S.W.2d 411, 415 (Tex. Civ. App.—Dallas 1959, writ ref'd n.r.e.) (quoting *Daughtry v. Blanket State Bank*, 60 S.W.2d 272, 273 (Tex. Civ. App.—Austin 1933, no writ)).  To prevail on a malicious prosecution claim, the complaining party must show that (1) a criminal prosecution was commenced against him; (2) the criminal prosecution was initiated or procured by the defending party; (3) the prosecution was terminated in the complaining party's favor; (4) the complaining party was innocent; (5) the defending party lacked probable cause to initiate the prosecution; (6) the defending party acted with malice; and (7) the complaining party suffered damages.  *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 421 (Tex. App.—Dallas 2007, pet. denied).  A criminal

prosecution is initiated when a formal charge is made to law enforcement authorities, that is, when the charging instrument which goes before the magistrate is executed. *Browning-Ferris Indus. v. Lieck*, 881 S.W.2d 288, 292 (Tex. 1994); *Gunville v. Gonzales*, 508 S.W.3d 547, 557 (Tex. App.—El Paso 2016, no pet.) (citing RESTATEMENT (SECOND) OF TORTS, § 653(a) cmt. c (1977)). A criminal prosecution is procured when the person's "actions are enough to cause the prosecution, and but for [his] actions the prosecution would not have occurred." *Lieck*, 881 S.W.2d at 292.

Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress is a "gap-filler" tort intended "to supplement existing forms of recovery by providing a cause of action for egregious conduct 'that its more established neighbors in tort doctrine would technically fence out.'" *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998) (quoting *Towards a Jurisprudence of Injury: The Continuing Creation of a System of Substantive Justice in American Law*, 5-11, 5-13 (Report of the American Bar Association from the Special Committee on the Tort Liability System, 1984)). To establish a claim for intentional infliction of emotional distress, the complaining party must prove conduct that (1) was intentional or reckless; (2) was extreme and outrageous; and, (3) caused severe emotional distress. *See GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). A claim for intentional infliction of emotional distress will not lie "when the risk that emotional distress will result is merely incidental to the commission of some other tort" or the "actor 'intends to invade some other legally protected interest,' even if emotional distress results." *Standard Fruit*, 985 S.W.2d

at 67, 68 (quoting RESTATEMENT (SECOND) OF TORTS § 47 cmt. a (1965)).  In other words, for an intentional infliction of emotional distress claim to be viable, emotional distress must be "the intended or primary consequence" of the complained-of conduct.  *Id.* at 67.

### Statute of Limitations

Actions for defamation and malicious prosecution are subject to a one-year statute of limitations from the date of accrual.  TEX. CIV. PRAC. REM. CODE ANN. § 16.002 (West 2002).  A cause of action for defamation generally accrues when the defamatory statement is published.  *Deaver v. Desai*, 483 S.W.3d 668, 674 (Tex. App.—Houston [14th Dist.] 2015, no pet.).  A malicious prosecution claim accrues on the date the prosecution ends.  *Mead v. Prop. Owners Ass'n of Terilingua Ranch, Inc.*, 410 S.W.3d 434, 438 (Tex. App.—El Paso 2013, no pet.).

### *Standard of Review*

We review a trial court's ruling on a motion to dismiss under the TCPA de novo.  *Levatino*, 486 S.W.3d at 727.  In conducting this review, we consider, in the light most favorable to the non-movant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based.  *Campbell v. Clark*, 471 S.W.3d 615, 623 (Tex. App.—Dallas 2015, no pet.); *Cheniere Energy, Inc. v. Lofti*, 449 S.W.3d 210, 214 (Tex. App.—Houston [1st Dist.] 2104, no pet.).

### *Application of Law to Facts*

### Burk's Initial Burden

Having filed the motion to dismiss under the TCPA, Burk bore the initial burden of showing by a preponderance of the evidence that the claims against him were "based on, relate[d] to, or [were] in response to [his] exercise of the (1) right of free speech; (2) the right to petition; or (3) the right of association."  *See ExxonMobil Pipeline*, 512 S.W.3d at 898.  As stated, Burk asserted the statements forming the bases of the claims against him were protected

–11–

speech "that touch and concern health and safety[,] . . . the well-being of the community[,]" freedom of petition, and freedom of association. In arguing Burk failed to meet his initial burden, Fishman does not claim that Burk failed to satisfy his burden with respect to the intentional infliction of emotional distress claim. Fishman's argument focuses exclusively on Burk's burden with respect to the defamation and malicious prosecution claims.

Fishman acknowledges "the allegation of a death threat 'implicates a question of public importance,'" but argues nonetheless that Burk's communication of the death threat to the police and building security was not a matter of public concern because it was private, made "within the private offices of the Company." In making this argument, Fishman equates "a matter of public concern" with a "public communication" and relies on our opinion in *Pickens v. Cordia*, 433 S.W.3d 179 (Tex. App.—Dallas 2014, no pet.) for support.

In *Pickens*, we concluded that a blog that discussed "issues related to 'addiction, parental abuse, father's responsibilities to their children and family dynamics'" in the context of the blogger's own experiences was not a communication relating to a matter of public concern. *Pickens*, 433 S.W.3d at 184-85, *disapproved on other grounds by*, *Hersh v. Tatum*, No. 16-0096, 2017 WL 2839873 (Tex. June 30, 2017). In reaching that conclusion, we found guidance in *Miranda v. Byles*, 390 S.W.3d 543 (Tex. App.—Houston [1st Dist.] 2012, pet. denied), which dealt "with the issues of private facts and public issues," although outside the TCPA context. *Id.* at 184. We noted that the *Miranda* court explained that an issue

> is not a public issue simply because it is a controversy of interest to the public. [*Miranda*, 390 S.W.3d at 554]. Instead, the inquiry concerns whether people in the public were debating the specific issue and whether the media was covering that debate. *Id.* A matter can be a public issue "because people in the public are discussing it or because people other than the immediate participants are likely to feel the impact of its resolution." *Id.*

*Pickens*, 433 S.W.3d at 184-85. Since *Pickens*, however, the Texas Supreme Court has held that the TCPA's plain language "limits its scope to communications involving a public subject—not

communications in public form." *Lippincott v. Whisenhut*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam).

Burk's allegation to the police and building security that Fishman threatened to shoot him implicated not just a question of "public importance" but a matter of public concern because it related to Burk's safety and the well-being of COD's employees and others in the building. *See* TEX. CIV. PRAC. & REM CODE ANN. § 27.001(3), (7); *Watson v. Hardman*, 497 S.W.3d 601, 607 (Tex. App.—Dallas 2016, no pet.) (noting TCPA does not define "community well-being," but courts have held a statement "about a children's baseball coach's angry and aggressive behavior during a game" and statements regarding misconduct or crime to be statements relating to "community well-being"); *Backes v. Misko*, 486 S.W.3d 7, 18 (Tex. App.—Dallas 2015, pet. denied) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1998 (1981) as defining "safety" to mean "the condition of being safe; freedom from exposure to danger; exemption from hurt, injury, or loss."). As Burk notes in his brief, "[c]ourts have routinely held that matters related to the reporting of crimes and related proceedings are matters of public concern."[10] *See Klentzman v. Brady*, 456 S.W.3d 239, 258 (Tex. App.—Houston [1st Dist.] 2014) (citing *Cox Broad Corp. v. Cohn*, 420 U.S. 464, 492 (1975)), *aff'd*, 515 S.W.3d 878 (Tex. 2017). We conclude that Fishman's contention that Burk failed to meet his initial burden is without merit.

<u>Fishman's Burden</u>

Having concluded Burk satisfied his initial burden, we determine now whether Fishman satisfied his burden of establishing by clear and specific evidence a prima facie case for each essential element of the claim in question. Burk did not dispute in the trial court, nor does he contend in his brief, that Fishman did not satisfy this burden with respect to the defamation

---

[10] Burk argues also that filing of a police report "is certainly part of a citizen's right to petition the government." *See* TEX. CIV. PRAC. REM. CODE ANN. § 27.001(4). Because we conclude the challenged communications were made in exercise of the right of free speech, we do not address that argument. *See ExxonMobil Pipeline*, 512 S.W.3d at 901-02.

–13–

claim, and we will assume, without deciding, that he did. Accordingly, we address only the malicious prosecution and intentional infliction of emotional distress claims.

Fishman contends he brought forth clear and specific evidence for each essential element of each of these claims. With respect to the malicious prosecution claim, he notes first that he showed "Burk initiated and procured the criminal investigation against Fishman arising from the October 29, 2013 confrontation" and that, as a result, "a criminal investigation commenced." To prevail on this claim however, Fishman had to show a criminal *prosecution* was commenced, and it was initiated or procured by Burk. *See Ogg*, 239 S.W.3d at 421. A criminal investigation is not a criminal prosecution. As stated, a criminal prosecution begins when a formal charge is made, that is, when the charging instrument is executed. *See Lieck*, 881 S.W.2d at 292; *Gunville*, 508 S.W.3d at 557. Without a showing of a criminal prosecution, a malicious prosecution claim fails. *See Ogg*, 239 S.W.3d at 421. Accordingly, on the record before us, we conclude Fishman did not satisfy his burden with respect to this claim. *See* TEX. CIV. PRAC. REM. CODE ANN. § 27.005(c).

We also conclude, on the record before us, that Fishman did not satisfy his burden with respect to his intentional infliction of emotional distress claim. *See id.* In responding to Burk's motion to dismiss, Fishman addressed Burk's contention that the intentional infliction of emotional distress claim was essentially the same as the defamation claim, arguing that the motion to dismiss was not the proper pleading to raise that argument.[11] Fishman also claimed that Burk failed to show this claim was "based on, related to, or was in response to" protected speech. Fishman, however, did not present any evidence establishing, or even argue that he established, a prima facie case for each element of this claim. *See id.*

---

[11] Fishman also raises that argument in his brief on the merits. However, in light of our conclusion that he failed to satisfy his burden of establishing by clear and specific evidence a prima facie case as to each element of his intentional infliction of emotional distress claim, we do not address that argument.

–14–

Because Fishman failed to satisfy his burden with respect to his malicious prosecution and intentional infliction of emotional distress claims, we conclude the trial court did not err in granting Burk's motion to dismiss as to these two claims. To the extent Fishman argues otherwise, we decide his first issue against him.

### Burk's Second Burden

As to the defamation claim, with no dispute that Fishman established by clear and specific evidence a prima facie case for this claim, the burden of showing entitlement to dismissal under the TCPA fell back on Burk. To satisfy this burden, Burk had to establish by a preponderance of the evidence a valid defense as to that claim. *See* TEX. CIV. PRAC. REM. CODE ANN. § 27.005(d).

Burk's defense was that the claim was barred by limitations. *See* TEX. R. CIV. P. 94. Fishman's defamation claim accrued on October 29, 2013, the day of the confrontation that led to his firing and reporting of his alleged threats. *See Deaver*, 483 S.W.3d at 674. Under the applicable statute of limitations, Fishman had one year from that date to sue on that claim. *See* TEX. CIV. PRAC. REM. CODE ANN. § 16.002(a). Fishman, however, did not assert the claim until August 2015.

In his brief, Fishman does not dispute his claim is barred. Instead, he contends Burk's assertion in his dismissal motion that the claim was barred "as a matter of law" converted that portion of the motion into a motion for summary judgment. Fishman argues that "by seeking dismissal as a matter of law," Burk was seeking relief on traditional summary judgment grounds under Texas Rule of Civil Procedure 166a and was required to comply with that rule's notice requirement. Under rule 166a, "[e]xcept on leave of court, with notice to opposing counsel," a summary judgment motion and any supporting affidavits must be filed and served on the non-movant at least twenty-one days before the date of hearing. TEX. R. CIV. P. 166a(c). Fishman

notes Burk's motion was filed September 4, 2015, the notice of hearing was filed and served September 8, 2015, and the hearing was held September 22, 2015. Because he received less than twenty-one days' notice, Fishman contends the trial court's order should be reversed.

Fishman, however, misinterprets Burk's argument. In asserting limitations barred the defamation and malicious prosecution claims, Burk cited to section 27.005(d) of the TCPA, not rule 166a. As stated, section 27.005(d) allows for dismissal of a suit "based on, relate[d] to, or in response to" a protected right, even when the party bringing the suit establishes by clear and specific evidence a prima facie case for each essential element of his claim, if the moving party establishes by a preponderance of the evidence each essential element of a valid defense. TEX. CIV. PRAC. REM. CODE ANN. § 27.005(d). We conclude Fishman's argument that a portion of Burk's motion to dismiss was an improper motion for summary judgment is without merit.

Having established a valid defense by a preponderance of the evidence, Burk was entitled to dismissal of the defamation claim. *See id.* To the extent Fishman contends in his first issue that the trial court erred in granting Burk's motion on this claim, we decide the issue against him.

## SUMMARY JUDGMENT

In his second issue, Fishman claims that the court erred in granting summary judgment on COD's breach of contract and declaratory judgment claims because a genuine issue of material fact existed as to whether the transfer of his shares to Brody and the Trust was void and whether he substantially performed or complied with the notice provisions.

*Applicable Law*

Summary Judgment

To prevail on a traditional motion for summary judgment, the movant must establish no genuine issue of material fact exists, and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex.

–16–

2003).   To establish a right to recover as a matter of law, a plaintiff-movant must prove conclusively all elements of his cause of action.  *W.H.V., Inc. v. Assoc. Hous. Fin.*, 43 S.W.3d 83, 87 (Tex. App.—Dallas 2001, pet. denied).   A matter is conclusively established when ordinary minds cannot differ as to the conclusion to be drawn from the evidence.  *Id.* (citing *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982)).   If the plaintiff satisfies his burden, the burden shifts to the defendant to respond and present evidence raising a fact issue as to the material facts in question including any affirmative defenses asserted.  *Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex. App.—Dallas 2007, pet. denied); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

<u>Breach of Contract</u>

To prevail on a breach of contract claim, a plaintiff must establish (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and, (4) the plaintiff sustained damages because of the breach.  *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App.—Dallas 2008, no pet.).  Substantial performance or compliance is a defense to a breach of contract claim if the defendant establishes the deviation from the contract did not severely impair the purpose underlying the contract or was "technical or unimportant."  *See In re G.D.H.*, 366 S.W.3d 766, 771 (Tex. App.—Amarillo 2012, no pet.); *Smith v. Smith*, 112 S.W.3d 275, 279 (Tex. App.—Corpus Christi 2003, pet. denied); *Patel v. Ambassador Drycleaning Co., Inc.*, 86 S.W.3d 304, 307 (Tex. App.—Eastland 2002, no pet.) (quoting *Balcones Corp. v. Sutherland*, 318 S.W.2d 691, 694 (Tex. Civ. App.—San Antonio 1958, writ ref'd n.r.e.)).   Generally, the proper remedy for breach of contract is monetary damages, but specific performance may be substituted when monetary damages would not be adequate.  *See Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W3d 768, 774 (Tex. 2009) (per

–17–

curiam); *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App. —Dallas 2007, pet. denied).

<u>Declaratory Judgment</u>

A declaratory judgment is a remedial measure that affords parties relief from uncertainty with respect to rights, status, and other legal relations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2015); *Halliburton Energy Servs., Inc. v. Axis Tech, LLC*, 444 S.W.3d 251, 262 (Tex. App.—Dallas 2014, no pet.). It is proper if it "serves a useful purpose or will terminate the controversy between the parties." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995). Under the Texas Uniform Declaratory Judgments Act, a party to a contract may seek construction of the contract and obtain a declaration of its rights and status under the contract either before or after a breach has occurred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a),(b).

*Standard of Review*

<u>Declaratory Judgment</u>

In reviewing a declaratory judgment, we refer to the procedures for resolution of the issue at trial to determine the applicable standard of review on appeal. *Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216, 222 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

<u>Breach of Contract</u>

The interpretation of an unambiguous contract is a question of law we review de novo. *MCI Telecomms. Corp v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650-51 (Tex. 1999). In construing a contract, our primary objective is to ascertain and give effect to the intentions the parties have objectively manifested in the agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with

–18–

respect to the whole agreement. *Id.* at 312. Unless the agreement shows the parties used a term in a technical or different sense, we give the terms their plain, ordinary, and generally accepted meaning. *Heritage Res., Inc. v. Nationsbank*, 939 S.W.3d 118, 121 (Tex. 1996).

<u>Summary Judgment</u>

We review a trial court's summary judgment de novo. *Provident Life*, 128 S.W.3d at 215. In conducting our review, we take as true all evidence favorable to the non-movant and indulge every reasonable inference, and resolve any doubts, in the non-movant's favor. *Id.*

*Application of Law to Facts*

As stated, COD's breach of contract and declaratory judgment claims asserted (1) Fishman's transfer of his share to Brody, as trustee for the Trust, was a transfer for consideration because it was in exchange for a $15,000 promissory note; (2) as a transfer for consideration, it required an "Offer Notice;" and, (3) because notice was not given, the transfer was void. COD sought specific performance of the agreement and a declaration that Fishman's transfer to Brody and the Trust was void, COD had the option to purchase Fishman's shares, and the shares were to be transferred to COD as per the shareholder agreement.

Relevant to COD's claims are the following provisions in the shareholder agreement:

2.1     **Defined Terms.** As used in this Agreement, each defined capitalized term in this Agreement shall have the meaning so ascribed to it, and each of the following terms shall have the meaning ascribed to it in this Article 2:

        **

**"Transfer by Gift"** means a Voluntary Transfer of all or any portion of the transferor's interest in Shares to or for the benefit of a charitable organization or a natural object of the transferor's bounty, made during the lifetime of the transferor.

**"Voluntary Transfer"** means a Transfer of any interest in such Shares by the free and voluntary act of the transferor (other than from the filing of a petition in bankruptcy), Transfers by Gift and voluntary pledges.

3.3     **Voluntary Transfer; Rights of First Refusal.** Except for a Voluntary Transfer made to the Company, a Transfer by Gift, or a Voluntary Transfer

–19–

pursuant to the provisions of Article 5, any proposed Voluntary Transfer of any Shares by a Shareholder is subject to the following provisions:

    (a) Prior to the Voluntary Transfer, the Shareholder shall first send an Offer Notice to the Company and the Remaining Shareholders describing the Voluntary Offer (the "Offer"). . . .

    (b) For a period of 30 days after the date of the delivery of the Offer Notice, the Company has the right to elect to purchase all or any portion of the Shares that are the subject of the Offer for a per Share price equal to the offering price per Share specified in the Offer Notice. The purchase price for the Shares to be redeemed by the Company pursuant to acceptance of the Offer is payable on the same terms and conditions as stated in the Offer.

    (c) If the Voluntary Transfer is for consideration, the Company has the right to purchase all or any portion of the Shares to be transferred on terms identical to the terms of the Offer Notice (or a sum of money equal in value to the total consideration to be paid). If a portion of the consideration consists of property other than cash, in determining the value of the total consideration, the property's value is its fair market value as of the time the Company exercises its right to purchase the Shares.

    **

4.1   **Permitted Transfers by Gift.**  The provisions of Section 3.3 do not apply to any Transfer by Gift made by a Shareholder ("the Gifting Shareholder") during his life to:

    **

    (c) the trustee of an inter vivos trust for the sole benefit of on ore more Shareholders of the Shareholder's Immediate Family, provided that the Company is notified in writing at least 30 days prior to the proposed Transfer. The notice shall specify the exact name of the trust and its federal tax identification number (or indicate that the number has been applied for but not received), and the name, address and relationship to the Shareholder of all trustees and beneficiaries of the trust or trusts and their respective federal tax identification or social security numbers (or indicate that the numbers have been applied for but not received).

    **

10.1   **Notices.**  Any notice, offer, acceptance, instruction, authorization, request or demand required or permitted hereunder must be in writing, and must be delivered either by personal delivery, by certified or registered mail, return receipt requested, or by courier or delivery service, addressed to the parties hereto [the Shareholders] at the address indicated beneath their respective signatures on the

execution pages of this Agreement or the adoption agreement contemplated by Section 3.2, as applicable, or at such other address and number as a party has previously designated by written notice given to the other parties in the manner set forth above.  Notices are deemed given when delivered and receipted for (or upon the date of attempted delivery where delivery is refused).

\*\*

12.2    **Breach and Equitable Relief.**  Any purported Transfer in breach of any provision of this Agreement is void; will not operate to Transfer any interest or title to or in the purported transferee; and will constitute an offer by the breaching Shareholder to sell his Shares to the Company at the purchase price per Share determined pursuant to Section 8.1 to be payable in accordance with Section 8.2. . . . Each party to this Agreement acknowledges, understands and agrees that each other party hereto will suffer immediate and irreparable harm if a party hereto breaches or attempts or threatens to breach this Agreement and that monetary damages will be inadequate to compensate the non-breaching parties for any actual, attempted or threatened breach.  Accordingly, each party hereto agrees that each of the other parties hereto will, in addition to any other remedies available to them at law or in equity, be entitled to specific performance[.]

In arguing summary judgment was improper, Fishman does not dispute the validity of the shareholder agreement, that COD performed under the agreement, or that specific performance in accordance with section 12.2 of the agreement is the appropriate remedy.  His focus is on his alleged breach regarding notice and rendering the transfer void.

Fishman acknowledges the transfer was in exchange for a promissory note, but maintains, as he did in the trial court, that genuine issues of material fact exist as to the nature of the transfer because his summary judgment evidence established the transfer was a gift.  Further, he argues that genuine issues of material fact exist as to whether he substantially complied with the notice requirements for transfers by gift.

In arguing the transfer was a gift, Fishman notes first that no dispute exists the transfer was to a trust for the benefit of his grandchildren.  As such, the transfer "f[e]ll squarely" within the definition of "transfer by gift" in section 4.1 of the shareholder agreement.  He also observes that the $15,000 promissory note was substantially less than the $82,500 he paid for the shares.  Finally, relying on affidavit testimony, he notes that no payments have been made on the

promissory note. Because no payments have been made and he later cancelled the note, he argues the transfer was not for consideration but a gift.

Although Fishman claims that he raised a fact issue, the issue is one of contract construction—whether, under the shareholder agreement, a transfer to a trust for the benefit of a shareholder's grandchildren in exchange for a promissory note is a transfer for consideration under section 3.3 or a transfer by gift under section 4.1. The shareholder agreement does not define "consideration" or "gift." Accordingly, we use their "plain, ordinary, and generally accepted meaning[s]." *See Heritage Res.*, 939 S.W.3d at 121.

As relevant here, Webster defines "consideration" as "payment" and "gift" as "something that is voluntarily transferred by one person to another without compensation." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 484, 956 (1981).

Applying those definitions, we conclude Fishman's transfer to Brody and the Trust was a transfer for consideration under section 3.3 of the agreement. Under that section, an "Offer Notice" was required to be given. Fishman does not contend the notice he gave Burk complied with this requirement and does not contend that the substantial compliance argument applies if it was not a gift. Consequently, on the record before us, we conclude that the trial court did not err in granting COD's summary judgment motion. We decide Fishman's second issue against him.

## CONCLUSION

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

160581F.P05

–22–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARTIN FISHMAN AND ROBERT
BRODY AS TRUSTEE, INDIVIDUALLY
AND DERIVATIVELY, Appellants

No. 05-16-00581-CV     V.

C.O.D. CAPITAL CORP. D/B/A C.O.D.
FRIENDLY AND LOWELL BURK,
Appellees

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-12916.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Evans participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's judgment.

We **ORDER** that appellees C.O.D. Capital Corp. d/b/a C.O.D. Friendly and Lowell Burk recover their costs of this appeal from appellants Martin Fishman and Robert Brody as Trustee, Individually and Derivatively.

Judgment entered this 18th day of July, 2017.